| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR AUTHORIZATION TO OBTAIN LOCATION DATA CONCERNING A AT&T CELLULAR TELEPHONE ASSIGNED CALL NUMBER (618) 806-4612. | CASE NO. 12-mj-3109-DGW<br><br>UNDER SEAL<br><br>AFFIRMATION IN SUPPORT OF APPLICATION<br><br>FILED<br>JUL 0 5 2012<br>CLERK, U.S. DISTRICT COURT<br>SOUTHERN DISTRICT OF ILLINOIS<br>EAST ST. LOUIS OFFICE |

STATE OF ILLINOIS        )
COUNTY OF ST. CLAIR   : ss.:
SOUTHERN DISTRICT OF ILLINOIS  )

Neal Rohlfing, a Task Force Officer with the Drug Enforcement Administration, being duly sworn, deposes and states:

## INTRODUCTION

1. Neal Rohlfing, being duly sworn, deposes and states: I am a Task Force Officer with the Drug Enforcement Administration (DEA) of the United States Department of Justice, and have been so employed for approximately 2 1/2 years. Previously, I was employed as an Investigator with Saint Clair County Drug Tactical Unit and have been a Fairview Heights Police Officer for 11 years. I have participated in numerous narcotics investigations involving the transportation of controlled substances and/or of the proceeds/payments from controlled substance sales throughout the United States during my time with DEA. I have received extensive training by the DEA. I have participated in numerous drug investigations, which have resulted in the seizure of methamphetamine, crystal methamphetamine, ecstasy, cocaine, marijuana, and other controlled substances. I am familiar with and have utilized normal methods of investigation, including, but not limited to, visual surveillance, questioning of witnesses, the use of search and arrest warrants, the use of informants, the use of pen registers, the utilization of undercover agents and the use of court-authorized wire intercepts.

2. I submit this affidavit in support of an application for an order pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. 2703(c)(1)(A) directing AT&T to assist agents of the Drug Enforcement Administration by providing all information, facilities and technical assistance needed to ascertain the physical location of the cellular telephone assigned call number (618) 806-4612, subscriber unknown, but utilized by Deborah Perkins, with service provided by AT&T ("TARGET CELLPHONE #1), including but not limited to data indicating the specific latitude and longitude of (or other precise location information concerning) TARGET CELLPHONE #1 (the "Requested Information"),[1] for a period of thirty (30) days.

3. I have personally participated in the investigation set forth below. I am familiar with the facts and circumstances of the investigation through my personal participation; from discussions with other agents of the Drug Enforcement Administration and other law enforcement; from my discussions with witnesses involved in the investigation; and from my review of records and reports relating to the investigation. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another Drug Enforcement Administration agent, law enforcement officer or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken or whose reports I have read and reviewed. Such statements are among many statements made by others and are stated in substance and in part unless otherwise indicated. Since this affidavit is being submitted for the limited purpose of securing an order authorizing the acquisition of the

---

[1] Such information shall, where other information is unavailable, include records reflecting the tower and antenna face ("cell site") used by TARGET CELLULAR PHONE #1 at the start and end of any call. In requesting cell site information, the Government does not concede that such cell site records – routinely retained by wireless carriers as business records – may only be obtained via a warrant issued on probable cause. See In re Application, 460 F. Supp. 2d 448 (S.D.N.Y. 2006) (authorizing prospective acquisition of cell-site records under combined authority of 18 U.S.C. 2703(d) & 3121 et seq.).

Requested Information, I have not included details of every aspect of the investigation. Facts not set forth herein, or in the attached exhibits, are not being relied on in reaching my conclusion that the requested order should be issued. Nor do I request that this Court rely on any facts not set forth herein in reviewing this application.

4. Probable cause exists to believe that the Requested Information will lead to evidence of offenses involving distribution of heroin and conspiracy to distribute heroin, a controlled substance, in violation of Title 21, United States Code, Section 841 and 846, (the "TARGET OFFENSES"), as well as the identification of individuals who are engaged in the commission of these offenses.

5. For the reasons set out in this affidavit, there is probable cause to believe that the TARGET OFFENSES have been committed, are being committed, and will continue to be committed by Deborah Perkins and others known and unknown in this heroin Drug Trafficking Organization (DTO). Further, there is probable cause to believe that Deborah Perkins is distributing heroin in the Fairview Heights, Illinois area on a frequent basis. While distributing heroin in the Fairview Heights, Illinois area, Perkins is utilizing TARGET CELLPHONE #1 to commit the TARGET OFFENSES.

### Background of the Investigation

6. This application is submitted in connection with a heroin trafficking organization targeting Deborah Perkins, a heroin trafficker based in the Fairview Heights, Illinois area. Based on information provided by a confidential source, agents believe Deborah Perkins to be a heroin trafficker in the Fairview Heights, Illinois area. It is further believed that Perkins is ultimately

obtaining heroin from a Chicago, Illinois source of supply capable of providing large quantities of heroin.

7. On January 18, 2011, Agents with the Metropolitan Enforcement Group of Southern Illinois utilized Confidential Informant #1 who has been reliable and corroborated to purchase heroin from Harold Gardner, Perkins' son. CI#1 also introduced an Undercover Agent to Gardner that day and the UC purchased heroin from Gardner. On that date, Agents observed Gardner leave the meet location and go to 20 Kassing Drive, Fairview Heights, Illinois where it is expected Gardner retrieved heroin to complete the transaction. Deborah Perkins owns and resides at 20 Kassing Drive, Fairview Heights, Illinois. Gardner resided at the residence at that time but no longer lives there.

8. Agents with the Metropolitan Enforcement Group of Southern Illinois conducted five additional undercover agent purchases of heroin from Gardner in the Caseyville, Illinois area between January 18, 2011, and March 24, 2011. On two of the undercover purchases Gardner was observed by agents leaving 20 Kassing Drive, Fairview Heights, Illinois.

9. On June 23, 2011, Harold Gardner was indicted in the Southern District of Illinois for distribution of heroin. On March 15, 2012, Gardner was arrested. According to CS#2 (See paragraph 12) Deborah Perkins continued to travel to Chicago, Illinois to purchase heroin and sell heroin in the Fairview Heights, Illinois area after Gardner's arrest.

10. On June 26, 2012, TFO Neal Rohlfing and TFO Lee Rinehart met a confidential source (CS #2), concerning the narcotic related activities of Deborah Perkins. It should be noted, CS#2 has been found to be reliable, and his/her information has been corroborated. CS#2 has

provided information about other subjects involved in drug trafficking which has been found to be accurate by the Drug Enforcement Administration.

11. According to CS#2, Perkins is running a heroin trafficking organization based in Fairview Heights, Illinois where she resides. CS#2 said that Perkins obtains heroin from a source in Chicago and Perkins sells the heroin in the Fairview Heights area. CS#2 has also said that Perkins supplies her son Doug Oliver with heroin and that Oliver has his own customers. Oliver lives with Perkins at 20 Kassing Drive, Fairview Heights, Illinois. CS#2 has known Perkins for 24 years. CS#2 told agents Perkins is selling gram quantities of heroin but is capable of selling ounce quantities of heroin. CS#2 said Perkins is selling high quality heroin for approximately $2,500.00 per quarter ounce and approximately $110 per gram. CS#2 told agents he/she purchased heroin from Perkins over the past nine weeks. CS#2 stated he/she was trusted by Perkins and has been inside her residence at 20 Kassing Drive, Fairview Heights, Illinois on numerous occasions. CS#2 stated he/she has seen multi-ounce quantities of heroin inside the residence. CS#2 stated Deborah Perkins goes to Chicago, Illinois to purchase heroin. CS#2 stated Perkins rides the Mega bus to Chicago, Illinois to purchase heroin. CS#2 stated Perkins asked him/her in the past month to go with her to Chicago, Illinois to purchase heroin.

12. On June 27, 2012, TFO Neal Rohlfing, TFO Ben Callahan and TFO Lee Rinehart met with CS#2 concerning the narcotic related activities of Deborah PERKINS. Agents observed CS#2 call PERKINS at TARGET CELLPHONE #1. PERKINS answered the call and spoke to the CS. The CS informed PERKINS he/she was "suffering" and needed to meet with her. PERKINS informed the CS to call before he/she came over. The CS informed TFO Rohlfing and TFO Callahan that telling PERKINS he was suffering was code for that he needed more

heroin. I recognized the voice on the other end of Target Cellphone #1 to be that of Perkins due to past encounters and discussions with Perkins.

13. On July 3, 2012, TFO Neal Rohlfing, TFO Ben Callahan and TFO Benjamin Callahan met with CS#2 concerning the narcotic related activities of Deborah PERKINS and to make a recorded telephone call to Perkins. Agents observed CS#2 call PERKINS at TARGET CELLPHONE #1. PERKINS answered the call and spoke to the CS. The CS informed PERKINS he/she needed to meet with her. PERKINS informed the CS she was not home but would call him/her when she was home. I recognized the voice on the other end of Target Cellphone #1 to be that of Perkins due to past encounters and discussions with Perkins.

14. On July 3, 2012, agents directed CS#2 to attempt a controlled purchase from Perkins at 20 Kassing Drive, Fairview Heights, Illinois. CS#2 responded to Perkins' residence and attempted to purchase heroin but Perkins did not have any more for sale. Perkins informed CS#2 she would be leaving the area to obtain more heroin in the next couple of days. CS#2 understood this as Perkins would be going to Chicago, Illinois to purchase heroin. This meeting was recorded and CS#2's arrival and departure from Perkins' residence was observed by agents. CS#2 also said that a female was at the house at the same time and was attempting to purchase heroin from Doug Oliver. CS#2 said the female and Oliver went into another room while he/she was talking to Perkins.

15. During surveillance when agents observed CS#2 leave Perkins' residence, agents also observed an unknown female leave the residence. A traffic stop was conducted on the unknown female in Belleville, Illinois. The female informed agents she had just left her friend

Deborah Perkins' house in Fairview Heights. The female informed agents they should know Perkins because she sells heroin.

16. It is anticipated Deborah Perkins will use TARGET CELLPHONE #1 to further the violations of 21 USC 841 and 846.

## AUTHORIZATION REQUEST

17. Based on the foregoing, there is probable cause to believe that the Requested Information will lead to evidence regarding the activities described above. As outlined above the investigative team believes that Perkins lives in Fairview Heights, Illinois and will be in possession of TARGET CELLPHONE #1 while distributing heroin in the Fairview Heights, Illinois area. The requested information is necessary to determine the approximate location of Deborah Perkins so that law enforcement agents can conduct physical surveillance of Perkins in connection with the delivery of heroin in the Fairview Heights, Illinois area. It is also anticipated Perkins will travel to Chicago, Illinois to further purchase additional amounts of heroin to distribute in the Fairview Heights, Illinois area.

18. WHEREFORE, pursuant to Federal Rule of Criminal Procedure 41, and 18 USC 2703(c)(1)(A), it is requested that the Court issue a warrant and Order authorizing the acquisition of the Requested Information and directing AT&T, the service provider for TARGET CELLULAR PHONE #1, to initiate a signal to determine the location of TARGET CELLULAR PHONE #1 on the service provider's network or with such other reference points as may be reasonably available and at such intervals and times as directed by the law enforcement agent serving the proposed order, and to furnish the technical assistance necessary to accomplish the acquisition unobtrusively and with a minimum of interference with such services as that provider

accords the user(s) of TARGET CELLULAR PHONE #1 for a period of thirty (30) days. Reasonable expenses incurred pursuant to this activity will be processed for payment by the DEA.

19. IT IS FURTHER REQUESTED that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate TARGET CELLULAR PHONE #1 outside of daytime hours.

20. IT IS FURTHER REQUESTED that the warrant and this affirmation, as it reveals an ongoing investigation, be sealed until further order of the Court in order to avoid premature disclosure of the investigation, guard against fugitives, and better ensure the safety of agents and others.

21. IT IS FURTHER REQUESTED that, pursuant to 18 U.S.C. 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), the Court authorize notice to be delayed for a period of 30 days after the termination of the monitoring period authorized by the warrant.

_____
**Neal Rohlfing**
**Task Force Officer**
Drug Enforcement Administration

Sworn to before me this
5th day of July, 2012

_____
DONALD G. WILKERSON
United States Magistrate Judge